No. 909     December 18, 2024     853

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of D. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. M. E.,
*Appellant.*

Multnomah County Circuit Court
23JU00800;
Petition Number 114791;
A184320

Patrick W. Henry, Judge.

Submitted October 29, 2024.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Elena C. Stross, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and Mooney, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Mother appeals a juvenile court order requiring her to complete a psychological evaluation. In a single assignment of error, mother contends that the juvenile court erred when it ordered the evaluation because the Department of Human Services (DHS) did not meet its burden to establish that mother needed the evaluation under ORS 419B.387. Because we conclude that the record was legally sufficient to support the juvenile court's finding that mother needed a psychological evaluation to correct the jurisdictional bases, we affirm.

> "We review whether a juvenile court's order is authorized by a particular provision of ORS Chapter 419B for legal error. If the order is authorized, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome."

*Dept. of Human Services v. J. A. G.*, 328 Or App 739, 741, 538 P3d 587 (2023) (internal quotation marks and citation omitted).

Mother's child, D, was placed in substitute care in February 2023. Mother later stipulated to two bases for juvenile court dependency jurisdiction over D: "Mother needs the support of [DHS] to develop safe and appropriate parenting practices" and "Mother has been subject to physical and emotional harm in the home and needs the assistance of [DHS] to protect the child, without which the child is at risk of harm."

In March 2024, DHS asked the juvenile court referee to order mother and father to complete psychological evaluations. At the permanency hearing, the referee took "judicial notice of the prior orders and findings" and a recent DHS family report, heard a DHS caseworker's testimony, and ordered both parents "to participate in a psychological evaluation and follow the recommendations for the evaluation." Following a rehearing by a judge of the juvenile court, the court considered the exhibits that it had received into evidence, the record from the permanency hearing, and the referee's orders and findings, and affirmed the referee's order. Specifically, the court found:

"1.   Mother's position is that she is the victim of domestic violence at the hands of Father, yet she continues to voluntarily have contact with him. Father asserts that he is the victim of domestic violence at the hands of Mother;

"2.   Mother has received a number of domestic violence support services, including participating in support groups at the domestic violence shelter where she resides;

"3.   Mother claims that she is gaining insights into the dynamics between her and Father, but the child has been in care for 13 months and the agency wants to better understand why more progress has not been made; and

"4.   A psychological evaluation is needed by Mother to correct the circumstances that resulted in wardship and to prepare Mother to resume care of the child; and Mother has made little progress toward ameliorating the concern that led the child being taken into care."

On appeal, mother argues that DHS did not establish that she "needed" a psychological evaluation under ORS 419B.387. Mother contends that DHS "requested the evaluation as a *contingency*" and that even though "mother and father continued to have contact, the department failed to prove that she continued to do so in a way that subjected her to ongoing physical and emotional harm in her home with father." (Emphasis in original.) We disagree with mother's arguments.

ORS 419B.387 provides:

"If the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward, the court may order the parent to participate in the treatment or training if the participation is in the ward's best interests."

The Supreme Court has explained that the statute "require[s] that a juvenile court's finding that particular treatment (*e.g.*, a psychological evaluation) is *needed* by the parent must be connected more than tenuously to the jurisdictional bases that the treatment is being ordered to correct, and that it must be based in and supported by the evidentiary record." *Dept. of Human Services v. F. J. M.*, 370 Or 434, 448, 520 P3d 854 (2022) (emphasis in original). In determining whether a

parent needs treatment, a juvenile court may consider several factors, including "the circumstances that resulted in wardship," "the extent to which the treatment \*\*\* will correct those circumstances or otherwise prepare the parent to resume the ward's care," "the effectiveness of a parent's prior attempts \*\*\* to ameliorate those circumstances," and "the length of time over which those prior attempts were made." *Id.* at 447-48.

　　　　We conclude that the record was legally sufficient to support the juvenile court's finding that mother needed a psychological evaluation. *See id.* at 448 (explaining that a juvenile court's finding that a parent needs a psychological evaluation "must be connected more than tenuously to the jurisdictional bases that the treatment is being ordered to correct"). Here, the record demonstrated that mother was "impulsive," that she "often has escalated reactions," and that she had "not articulated a plan to keep [D] safe." In addition, the caseworker testified that mother frequently visited father's home and that father had contacted police four months earlier because mother was "forcing herself onto him." The caseworker further testified that the psychological evaluation would "give a broader perspective as to maybe the barriers of [mother's] functioning, which would grant [DHS] an ability to refer to further services" to help mother make progress toward reunification. The juvenile court did not err when it found that mother needed the psychological evaluation to correct the jurisdictional bases: to "develop safe and appropriate parenting practices" and to "protect [D]." *See Dept. of Human Services v. R. W. C.*, 324 Or App 598, 607, 526 P3d 1195, *rev den*, 371 Or 308 (2023) (concluding that the juvenile court did not err in "finding that father needed the psychological evaluation to address his substance abuse, which was one of the jurisdictional bases for [the child's] wardship"); *cf. J. A. G.*, 328 Or App at 746 (concluding that the "caseworker's beliefs about what would be helpful, unsupported by competent evidence" was insufficient to establish that the parent needed a mental health assessment).

　　　　Affirmed.